UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MAURICE KONIG,

                           Plaintiff,

     -against-

TRANSUNION, LLC, EQUIFAX
INFORMATION SERVICES, LLC,
BANK OF AMERICA, N.A.,

                       Defendants.
----------------------------------------------------------------x

**OPINION AND ORDER**

18 Civ. 7299 (JCM)

       Plaintiff Maurice Konig ("Plaintiff") brings this action against Bank of America, N.A. ("BANA"), Trans Union, LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax") (collectively "Defendants") under the Fair Credit Reporting Act, 15 U.S.C § 1681c, *et seq*. ("FCRA") for allegedly reporting aged BANA accounts for a period in excess of the maximum time allowed.[1] Plaintiff now moves pursuant to Fed. R. Civ. P. 15(a)[2] for leave to file a Second Amended Complaint in order to (1) add factual allegations in support of his claims, and (2) convert his individual claim into a class action. (Docket Nos. 80, 81). Defendants oppose the motion. (Docket Nos. 85, 86, 87). Plaintiff filed a reply in further support of his motion. (Docket No. 90). For the reasons set forth below, the motion is granted in its entirety.

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 42).

[2] Plaintiff also moves pursuant to Rule 16(b), which provides, in relevant part, that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). Because the Court grants Plaintiff's motion pursuant to Fed. R. Civ. P. 15(a), the Court explicitly declines to consider Plaintiff's Rule 16(b) arguments.

1

## I. BACKGROUND

Plaintiff brings this action under the FCRA alleging, *inter alia*, that Defendants Trans Union and Equifax reported Plaintiff's aged BANA accounts for more than seven-and-a-half years past the date of delinquency, in violation of Sections 1681c(a)(4) and (a)(5) of the FCRA. The FCRA provides that:

> [N]o consumer reporting agency may make any consumer report containing any of the following items of information:
> …
>  (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.
>
> (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C § 1681c(4), c(5). Pursuant to Section 1681c(c), the seven year period "shall begin, with respect to any delinquent account that is placed for collection … charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of commencement of the delinquency which immediately proceeded the collection activity, charge to profit and loss, or similar action." *Id.* § 1681c(c)(1).

Plaintiff filed his first complaint on July 31, 2018. (Docket No. 1). A Case Management and Scheduling Order was entered on November 20, 2018. (Docket No. 26). On March 13, 2019, Plaintiff moved for leave to amend his complaint to clarify that there were four separate BANA accounts at issue, two of which were reported on Plaintiff's Trans Union credit file, and two of which were reported on his Equifax credit file. (Docket Nos. 36, 37). The Court granted Plaintiff's motion. (Docket No. 49). Plaintiff filed his First Amended Complaint on June 5, 2019. (Docket No. 51). Plaintiff now moves for leave to file his Second Amended Complaint (1) to add factual allegations relating to the FCRA background and regulatory guidance on how credit reporting agencies should prevent obsolete data from being reported, and to further detail

how Defendants' policies and practices violated the FCRA, and (2) to convert his individual claim into a putative class action ("Proposed 2d Am. Compl."). (Docket Nos. 80, 81, 81-1, 81-2). Plaintiff's proposed amendment includes four sub-classes:

> Class A: All natural persons residing within the United States, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, whose Equifax and TransUnion credit reports contained an adverse BANA trade line with a date of last payment date that is more than seven years and seven months from the date of the reporting.
>
> Subclass A: All natural persons residing in the State of New York, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, whose Equifax and TransUnion credit reports contained an adverse BANA trade line with a date of last payment date that is more than seven years and seven months from the date of the reporting.
>
> Class B: All natural persons residing within the United States, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, on whose behalf a dispute was made to Equifax and TransUnion on an antedated adverse BANA trade line, after which Equifax, TransUnion and BANA verified the account as accurately reporting.
>
> Subclass B: All natural persons residing in the State of New York, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, on whose behalf a dispute was made to Equifax and TransUnion on an antedated adverse BANA trade line, after which Equifax, TransUnion and BANA verified the account as accurately reporting.

(Proposed 2d Am. Compl. ¶¶ 61-62). Defendants oppose the proposed Second Amended Complaint on the grounds that it is unduly delayed, made in bath faith, unduly prejudicial, and ultimately futile. (Docket No. 85).

## II. DISCUSSION

Pursuant to Rule 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly

3

prejudiced if leave is granted, or the proposed amendment is futile." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

A. **Undue Delay**

Defendants assert that the motion should be denied on the ground that there was undue delay. (Docket No. 85 at 21).[3] Defendants maintain that discovery was complete as to Trans Union by April 2019, and that Plaintiff waited four additional months to file the motion when summary judgment was "imminent." (*Id.*). However, "[d]elay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) ("[W]e have held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion …") (internal citations omitted). Furthermore, "delay is rarely fatal to a Rule 15 motion if it can be explained." *Duling*, 265 F.R.D. at 97. "Although *some* explanation must be provided to excuse a delay … even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith." *Id.* (emphasis in original) (internal citation omitted). Moreover, "under the liberal standard of Rule 15(a), leave to amend may be appropriate at any stage of litigation." *Id.* Indeed, courts in this Circuit have allowed amendments involving much longer intervals between a party's discovery of relevant facts and filing of an amended pleading. *See Agerbrink*, 155 F. Supp. 3d at 453; *see also Blagman v. Apple, Inc.*, No. 12 Civ. 5453(ALC)(JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) (collecting cases where leave to amend was granted after delays of up to seven years).

Here, Plaintiff offers sufficient reasons for his delay. Plaintiff asserts that he "was not provided any explanation for how his BANA trade lines remained on his credit reports until the

---
[3] Page number citations refer to the pagination assigned upon electronic filing.

4

deposition of each Defendant." (Docket No. 81 at 13).  Specifically, Plaintiff argues that "[w]hile Trans Union's Deposition occurred in April, it was not until the deposition of BANA and Equifax on July 2 and July 3, that the issues became clear enough to warrant amendment." (*Id.*). Plaintiff further maintains that "[t]his is especially demonstrated by the fact that BANA and the CRAs[4] dispute who reported what pieces of information concerning the payment status and so until Plaintiff deposed both the CRAs and BANA, Plaintiff could not determine what to put in the amended Complaint, and where liability could be established." (*Id.* at 13-14).

Accordingly, because Plaintiff offers an adequate explanation for the delay and because "the time period at issue here is not substantial," *Blagman*, 2014 WL 2106489, at *3, Defendants must show bad faith or undue prejudice in connection with the delay in order to warrant denial of the motion.

**B. Bad Faith**

Defendants also argue that Plaintiff's motion was made in bad faith. (Docket No. 85 at 25).  Defendants assert that "the timing of the [m]otion is more than a little suspicious," maintaining that the motion was filed "on the brink of summary judgment," and "the true purpose of the [m]otion was to increase the settlement value of the case." (*Id.* at 26).  Defendants also acknowledge, however, that "[n]one or all of these suppositions may be true." (*Id.*).  The Court finds that these are "exactly the type of conclusory allegation[s] of bad faith" that courts in this Circuit reject. *Agerbrink*, 155 F. Supp. 3d at 453; *see also Blagman*, 2014 WL 2106489, at *3 (which held that "[t]o the extent that the defendants claim that [plaintiff's] delay was strategic … they provide no showing of bad faith apart from the delay itself."); *Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99 Civ. 3307(RMB)(MHD), 2000 WL 426396, at *5 (S.D.N.Y.

---
[4] Refers to credit reporting agencies.

5

April 20, 2000) (which held that "when the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow the amendment."). Because Defendants provide no showing of bad faith, Defendants have not sustained their burden.

## C. Undue Prejudice

Defendants also argue that the motion should be denied because they would be unfairly prejudiced by the proposed amendment. (Docket No. 85 at 22). "Prejudice alone is insufficient to justify a denial of leave to amend; rather the necessary showing is '*undue* prejudice to the opposing party.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal citations omitted); *see also Agerbrink,* 155 F. Supp. 3d at 454 (same). To determine whether the proposed amendment will cause undue prejudice, courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993)). Central to this analysis is the extent to which the new claims arise from the existing ones and whether a party had prior notice of a new claim. *See Blagman,* 2014 WL 2106489, at *3. "The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" *Agerbrink,* 155 F. Supp. 3d at 454 (internal citations omitted); *see also Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice).

Defendants argue that reopening discovery on new class claims would force them to incur significant costs associated with ascertaining every single class member and that this process will be "an incredibly difficult one." (Docket No. 85 at 22-23). Plaintiff claims, however, that "[b]ecause the bulk of discovery has been completed with the second deposition of BANA, and the anticipated responses from Equifax,[5] there is very little class discovery that will actually be required." (Docket No. 81 at 19). Notwithstanding this disagreement, "[t]he need for new discovery is not sufficient to constitute undue prejudice on its own." *Duling*, 265 F.R.D. at 100; *see also A.V. by Versace, Inc.*, 87 F. Supp. 2d at 299 ("Allegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'") (internal citations omitted); *United States v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d. Cir. 1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."). Defendants' argument that the inclusion of class claims would require additional discovery is, therefore, not sufficient to defeat the motion at this stage.

Defendants also had prior notice of the proposed amendment because it "arises from the same transaction as the claims in the original pleading." *Agerbrink*, 155 F. Supp. 3d at 455; *see also Presser v. Key Food Stores Co-op, Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (which held that there was no prejudice to defendants when plaintiff sought to amend to add a class of plaintiffs because the class action would present the defendant with the same issues involved in the original lawsuit)*; A.V. by Versace*, 87 F. Supp. 2d at 299 (which held that there was no undue prejudice to defendants where the proposed amendments "do not raise factual claims unrelated to the events [in] its original [complaint]."); *Monahan*, 214 F.3d at 284 (which held that courts will

---

[5] Plaintiff appears to be referring to the pending discovery requests he served on Equifax prior to conducting the second deposition of BANA. (*See* Docket No. 81 at 8).

allow amendment where the party "had knowledge of the facts giving rise to the [amendment]."). Furthermore, Defendants' argument that they have already "made numerous decisions in this case," such as consenting to this Court's jurisdiction, as well as decisions relating to the scope of discovery and settlement, (Docket No. 85 at 24-25), are conclusory and unpersuasive. *See Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n*, 516 F. Supp. 378, 382-83 (S.D.N.Y. 1981). Accordingly, Defendants have not demonstrated that they will be unduly prejudiced by the proposed amendment.

**D. Futility**

"It is well established that '[l]eave to amend need not be granted … where the proposed amendment would be futil[e].'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997)) (alterations in original). Proposed amendments are futile if they would fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "Accordingly, the proposed amendment must be viewed in the light most favorable to the party moving to amend … and leave to amend should only be denied if the moving party can prove no set of facts which would entitle her to relief." *Presser*, 218 F.R.D. at 56; *see also Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91-92 (2d Cir. 2002) (which reversed district court's denial of amendment as futile because, although defendants "vigorously dispute[d]" plaintiff's version of events, "proposed amended complaint adequately set[ ] forth specific facts, which if proven, c[ould] support a finding of [defendant's liability].").

## 1. Plaintiff's Individual Claim

Defendants argue that the proposed amendment to include class claims is futile on the ground that Plaintiff's individual claims, upon which his class allegations are based, do not constitute a violation of the FCRA. (Docket No. 85 at 9-12). Specifically, Defendants assert that Plaintiff "misunderstands" and "blurs the distinction between" Section 1681c(a)(4) and (a)(5) of the statute. (*Id.* at 9-10). Defendants further argue that Plaintiff misstates the provisions by "substituting for the term 'date of first delinquency,' the benchmark for measuring the statutory maximum reporting period under [the statute], the term 'date of last payment,' the latter of which plays no role in the FCRA's statutory scheme." (*Id.* at 10). Defendants maintain that "Section 1681c(a)(4) does not even apply in this case, because Plaintiff fails to allege … that the [BANA] Accounts ever were 'placed for collection or charged to profit and loss.'" (*Id.*). In sum, Defendants argue that "[b]ecause Plaintiff has not pled … that the subject [BANA] Accounts underlying Plaintiff's individual claims were placed for collection or charged to profit and loss," or that the BANA Accounts included adverse items of information that antedate the report by more than seven years, as required for a violation of Section 1681c(a)(5), Defendants could not have violated the statute as to the putative classes. (*Id*. at 15-17).

Accepting as true all factual allegations set forth in the proposed Second Amended Complaint, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff states a legally cognizable claim for relief under the FRCA. Plaintiff sufficiently pleads that the subject BANA Accounts were placed for collection or charged to profit and loss. (Proposed 2d Am. Compl. ¶ 20). Plaintiff specifically claims that he had four mortgage lines which were held by BANA sometime prior to 2008, and that "[i]n or around 2008 or 2009, Plaintiff made his last payment on these debts, leaving a balance due." (Proposed 2d Am. Compl.

¶¶ 18-19).  Plaintiff further alleges that since he was unable pay these mortgages, "BANA placed [his] account into collection proceedings in 2009 and began foreclosure proceedings on each of the properties in 2010." (*Id.* at ¶ 20).  Plaintiff states that "[m]ore than seven and a half years have transpired since Plaintiff last paid on any of these BANA accounts," (*id.* ¶ 21), but "these trade lines continue to report on [his] Equifax and TransUnion credit report," (*id.* ¶ 22).  Plaintiff further maintains that "the date of delinquency has a direct correlation to the date of last payment." (*Id.* ¶ 23).  Although Defendants argue that the "'date of first delinquency' can never be the 'date of last payment,'" and that "date of last payment" has "no recognized place under Sections 1681c(a), or 1681c(c)," (Docket No. 85 at 17-18), they do not provide the Court with sufficient authority to support their argument.  Accordingly, Defendants have not sustained their burden of demonstrating that Plaintiff's individual claims are futile at the pleading stage.

**2. Proposed Class**

To determine whether a proposed class is futile, "it is necessary to evaluate the *likelihood* that [the] proposed class will be certified pursuant to [Rule 23(c)]." *Presser*, 218 F.R.D. at 56 (emphasis added); *see also Pierre v. JC Penney Co., Inc.*, No. 03-4782(JFB)(VVP), 2006 WL 407553, at *6 (E.D.N.Y. Feb. 21, 2006) (which held that when ruling on a motion to amend to include class claims, "the court is not deciding whether the instant action may proceed as a class action since that issue will ultimately be resolved … on a motion for class certification.").

In order to succeed in certifying a proposed class action, a party must satisfy the four procedural requirements of Rule 23(a): (1) the class is so numerous that "joinder of all members is impracticable;" (2) there are "questions of law or fact common to the class;" (3) the claims or defenses of the representative party is "typical" of those of the class; and (4) the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Once

the prerequisites of Rule 23(a) have been satisfied, the party must demonstrate that class certification is appropriate under Rule 23(b) by showing that: (1) common questions of law or fact predominate over individual issues; and (2) that a class action is "superior to other available methods for their fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Viewing the proposed Second Amended Complaint in the light most favorable to Plaintiff, the Court finds that the proposed classes are likely to satisfy the requirements of Rule 23. The Court cautions the parties not to conclude that certification is a forgone conclusion because it is "more appropriately addressed in the context of motions to certify the proposed classes." *Presser*, 218 F.R.D. at 57 (which held that "[w]here, as here, the defendants' opposition to the amendment involves not-yet-certified classes, allowing the amendment is appropriate and defendant's arguments against certification are 'more appropriately addressed in the context of motions to certify the proposed classes.'") (citing *Acad. of Ambulatory Foot Surgery*, 516 F. Supp. 378 at 382-83).

**i. Numerosity**

A class may be certified only if it is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is satisfied where a class contains 40 or more members). Moreover, the party seeking certification need not show the exact number of potential class members to satisfy the numerosity requirement. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Plaintiff alleges that Defendants "have been reporting aged trade lines for BANA debts on hundreds, if not thousands of credit reports for consumers, each of which violates the FCRA." (Proposed 2d. Am. Compl. ¶ 63). Viewing these claims in the light most favorable to Plaintiff, *see Presser,* 218 F.R.D. at 57, the Court finds that the number of aged trade lines for

BANA debts that have been reported by Equifax and Trans Union constituting FCRA violations are so numerous such that joinder of all members would be impracticable. [6]

## ii. Commonality and Typicality

Plaintiff must also show that the claims of the class members share questions of law or fact, and that he is typical of the class. Fed. R. Civ. P. 23(a)(1), (2). Rule 23 requires only that questions of law or fact be shared by the proposed class, not that *all* questions of law or fact raised be common. *See D'Alauro v. GC Services Ltd., P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996). Thus, "[t]he critical inquiry is whether the common questions are at the 'core' of the cause of action alleged." *Id.* (internal citations omitted). Here, there appears to be several questions of law and fact common to the proposed class, such as 1) whether Defendants violated Section 1681c of the FCRA, 2) whether Plaintiff and the classes have been injured by these violations, and 3) whether Plaintiff and the classes have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing. (Proposed 2d Am. Compl. ¶ 65); *see Massey v. On-Site Mgr., Inc.*, 285 F.R.D. 239, 244-45 (E.D.N.Y. 2012) (which found commonality present where defendant reported outdated information as a result of a centralized flaw in its software system and this flaw affected all the reports it created about the class members).

For these same reasons, typicality appears to be satisfied because "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936. Plaintiff maintains that he and members of the proposed class have claims arising out of a common uniform course of conduct -- adverse accounts reporting more than seven and a half years from the date of last

---

[6] "This is not to say that Plaintiff may make representations that are not 'likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Presser*, 218 F.R.D. at 57, n.5 (quoting Fed. R. Civ. P 11(b)(3)).

payment. (Proposed 2d Am. Compl. ¶ 66); *see also D'Alauro*, 168 F.R.D. at 456-57 (which held that "[w]hen the same 'unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.") (internal citations omitted); *Massey*, 285 F.R.D. at 245 (which held that plaintiff demonstrated that she is typical of the class where "Defendant issued a report about her that illegally contained outdated information … just as it did, by definition, for every class member."). Although Defendants argue that typicality is defeated because "Plaintiff's own claims do not fall within either provision of the statute," (Docket No. 85 at 19-20), this assertion is insufficient to demonstrate futility on the class claims for the reasons set forth in Section II.D.1, *supra*.

### iii. Adequacy of Representation

Plaintiff must also show that "class counsel [is] qualified, experienced and generally able to conduct the litigation … [and] class members [do] not have interests that are antagonistic to one another." *D'Alauro*, 168 F.R.D. at 457 (internal citations and quotation omitted). Plaintiff claims that he will fairly and adequately represent the proposed class, and that Plaintiff's counsel is experienced, and anticipates no impediments in the pursuit and maintenance of the class action. (Proposed 2d Am. Compl. ¶ 67). Plaintiff further maintains that neither Plaintiff nor his counsel have any interests which might interfere with the pursuit of this class action lawsuit. (*Id.* ¶ 68). Defendants dispute that Plaintiff's counsel is adequate to act as class counsel by raising a host of questions relating to his qualifications. (Docket No. 85 at 24, n.15). However, these assertions are speculative and conclusory. Plaintiff has thus sufficiently pled that he "has actively participated in the litigation of this case" and that his counsel is sufficiently qualified to represent the class. *Massey*, 285 F.R.D at 245.

13

### iv. The Requirements of Rule 23(b)

Class treatment is appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is satisfied "if resolution of some of the legal or factual issues that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Defendants argue that class treatment is not appropriate because it "would require a detailed examination of each putative class member's damages, to determine whether or not those damages exclude them from the class."[7] (Docket No. 85 at 20). Defendants further maintain that "determining which consumers are in fact non-exempt would be an excruciatingly complicated process, bordering on the impossible, and such a class could not be the subject of potential class action treatment." (*Id.* at 21). In response, Plaintiff asserts that two of his class definitions (Class B and Subclass B) exclude class members that may be subject to the exemption.[8] (Docket No. 90 at 12). Plaintiff further claims that, although the two other class

---

[7] Section 1681c(b) provides that the provisions of (1) through (5) of subsection (a) are not applicable in the case of any consumer credit report to be used in connection with—
    (1) a credit transaction involving, or which may reasonably be expected to involve, a principal amount of $150,000 or more;
    (2) the underwriting of life insurance involving, or which may reasonably be expected to involve, a face amount of $150,000 or more; or
    (3) the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more.

[8] Plaintiff maintains that "by limiting the class to consumers who receive credit reports upon request or dispute, the enumerated exemptions are not invoked, because credit reports pulled directly by consumers are never used for employment, life insurance, or loans. Creditors, insurers, and employers only rely on their own credit reports to avoid errors and fraud." (Docket No. 90 at 13, n.6).

definitions (Class A and Subclass A) do not exclude class members that may be exempt, these two class definitions could be modified at the time of class certification to exclude these class members. (*Id.*). Plaintiff claims that during class discovery, Defendants will be able to "track whether a credit pull is issued for employment purposes, life insurance purposes, or credit above $150,000," and that Plaintiff will exclude these criteria from his classes. (*Id.* at 12-13). Next, Plaintiff states that individualized inquiries are not required because he is not seeking actual damages, but instead is seeking only statutory damages for each class member. (*Id.* at 13). If, as Plaintiff claims, class definitions can be easily modified based on readily available information, the Court finds that class certification is likely appropriate. *See Massey*, 285 F.R.D at 246 (which held that "[t]he law is clear that when the determination of class membership can be easily made based on the review of readily available information, class certification is appropriate.").

Superiority under Rule 23(b)(3) also appears to be satisfied based on Plaintiff's contention that there are hundreds or thousands of consumer reports at issue, which absent a class would have to be brought separately or not at all. (Proposed 2d Am. Compl. ¶¶ 69-75); *see Massey*, 285 F.R.D. at 245 (which held that superiority was satisfied where "the evidence before the Court demonstrates, through the class action mechanism this Court and the parties can resolve thousands of claims, which would otherwise have to be brought on their own or not brought at all, using generalized and readily available proof."); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 479-80 (E.D.N.Y. 2001) (which held that "[c]lass actions are the superior method for resolving controversies when the main objects of Rule 23 are served, namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.").

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file his proposed Second Amended Complaint is granted. Plaintiff shall serve and file his Second Amended Complaint within ten days of the date of this Order.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 80).

Dated: February 4, 2020
       White Plains, New York

                                 **SO ORDERED:**

*[Signature: Judith C. McCarthy]*

                                   JUDITH C. McCARTHY
                                   United States Magistrate Judge